CtyM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 19 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | § § § |
| Plaintiff, | § § |
| v. | § § Civil Action No. 3:05-CV-1913-M |
| BETSY PRICE, TAX ASSESSOR-COLLECTOR OF TARRANT COUNTY, TEXAS, | § § § § |
| Defendant. | § § |

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) Plaintiff's Motion for Partial Summary Judgment (docket #11);
(2) Defendant's Cross-Motions for Summary Judgment and Partial Summary Judgment (docket
#14); and (3) Defendant's Motion for *Brillhart* Abstention (docket #14).

### BACKGROUND

Hartford Casualty Insurance Company ("Plaintiff") issued to Betsy Price, Tax Assessor-
Collector of Tarrant County, Texas ("Defendant"), both a Surety Bond and a Crime Shield Policy
for Governmental Entities. Defendant subsequently filed claims with Plaintiff, seeking
reimbursement under the Surety Bond and/or the Crime Shield Policy. Plaintiff instituted this
action on September 27, 2005, seeking a declaratory judgment that it has no liability to
Defendant under either of these policies.

On November 18, 2005, less than two months after Plaintiff instituted its declaratory
judgment suit in this Court, Defendant filed suit against Plaintiff in Texas state court ("state court

1

lawsuit"). The parties here are parties to the state court lawsuit, which involves the same Surety Bond, Crime Shield Policy, and claims. The circumstances alleged as giving rise to Hartford's liability are the same circumstances alleged in Hartford's declaratory judgment Complaint. Def. Brief at 13. In contrast to this case, however, the state court lawsuit involves another defendant, the principal on the Surety Bond, who is a Texas resident. The state court lawsuit is thus not removable to federal court because of a lack of diversity.[1]

In her Answer, Defendant pleaded a lack of subject matter jurisdiction, claiming sovereign immunity under the Eleventh Amendment to the United States Constitution and under Texas law. Alternatively, Defendant moves the Court to abstain from exercising jurisdiction, under the Brillhart abstention doctrine.

## ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment to the United States Constitution confers on states immunity from suit in law or equity, although they may consent to suit. Plaintiff argues that Defendant is not entitled to Eleventh Amendment immunity because she is not the state or an arm of the state. Plaintiff maintains that Eleventh Amendment immunity generally does not apply to counties, and that a suit against Defendant in her official capacity as Tax Assessor-Collector of Tarrant County, Texas is the equivalent of a suit against Tarrant County, and that Eleventh Amendment immunity is thus not available to Defendant.

Eleventh Amendment immunity generally does not apply to counties. Northern Ins. Co. v. Chatham County, 126 S. Ct. 1689, 1693 (2006)("this [Supreme] Court has repeatedly refused

---

[1]See Betsy Price, Tarrant County Tax Assessor-Collector v. Sabrina Burrus and Hartford Casualty Ins. Co., Cause No. 352-215061-05, pending in the 352nd Judicial District Court of Tarrant County, Texas.

to extend sovereign immunity to counties. This is true even when, as respondent alleges here, 'such entities exercise a 'slice of state power''''). To decide whether Defendant is actually an "arm of the state," and thus able to assert Eleventh Amendment immunity, the Court must look to the six factors identified in Hudson v. City of New Orleans and Clark v. Tarrant County, which are designed to determine the extent of *state* involvement. Hudson v. City of New Orleans, 174 F.3d 677, 679 (5th Cir. 1999); Clark v. Tarrant County, 798 F.2d 736 (5th Cir 1986). These factors are: (1) whether the state's statutes and case law view the agency as an arm of the state; (2) the source of the agency's funding; (3) the agency's degree of local autonomy; (4) whether the agency is concerned primarily with local, as opposed to statewide problems; (5) whether the agency has the authority to sue and be sued in its own name; and (6) whether the agency has the right to hold and use property. The most important of these factors is the source of the agency's funding and, more specifically, whether the relief requested, if granted by the court, would come directly from the state treasury. These factors do not form a precise test. Rather, they assist in balancing the equities and determining as a general matter "whether the suit is in reality a suit against the state itself."

In her Brief, Defendant concedes the following:

> Price...is a locally selected county official...A suit against her in her official capacity is considered to be a suit against Tarrant County...As Hartford correctly states, counties and county officials are not *generally* covered by the Eleventh Amendment.

Plaintiff claims that since this suit is a request for declaratory relief, not seeking direct recovery of state funds, or any funds, Eleventh Amendment immunity does not apply. Defendant responds that (1) this lawsuit "serves no purpose but to foreclose a possible right to recover

3

governmental money, much of which constitutes state funds," and (2) that Defendant "acts explicitly as a state agent." Defendant relies on McMillian, where the Supreme Court employed a "functional approach," rather than an "all or nothing" approach in deciding whether an officer represented a county or a state. McMillian v. Monroe County, Alabama, 520 U.S. 781(1997). Thus, Defendant "urges a modification of the Hudson factors to consider such a functional analysis," while acknowledging that in *Hudson*, such an approach was rejected.

This Court is bound by the decisions of the Fifth Circuit Court of Appeals. Where, as here, the Fifth Circuit has explicitly set forth the test to be used in determining whether a party may invoke Eleventh Amendment immunity, this Court is bound to employ that test. Only where a Fifth Circuit decision is at odds with a decision of the United States Supreme Court may the Court ignore the Fifth Circuit's decision.

McMillian involved a claim under 42 U.S.C. § 1983. The issue was whether the Monroe County sheriff was acting for the state or the county. In determining that the sheriff acted for the state, and not the county, the Supreme Court analyzed the official's functions under relevant state law. The Supreme Court relied on the Eleventh Circuit's holding that under Alabama law, "a sheriff acting in his law enforcement capacity is not a policymaker for the county."[2] In McMillian, the Alabama Constitution and interpretations of it by the Alabama Supreme Court, and "historical background as evidence of the framers' intent to ensure that sheriffs be considered executive officers of the state," provided the Supreme Court with "strong evidence that sheriffs act on behalf of the State, rather than the county, when acting in their law enforcement capacity."

---

[2]In so doing, the Supreme Court noted that since "the Court of Appeals includes Alabama, we defer considerably to that court's expertise in interpreting Alabama law." McMillian at 786 (citation omitted).

4

McMillian at 789.

In this case, Defendant has presented no state law, state precedent, or evidence that is remotely comparable to that which was provided in McMillian. Thus, McMillian does not mandate that this Court expand the test set forth in Hudson and Clark. The Court turns, then, to the factors of Hudson and Clark.[3]


Factor #1: Whether the state statutes and case law view the agency as an arm of the state

In McMillian, much of the Supreme Court's analysis revolved around the question of whether Alabama law considers a sheriff to be a state actor in the performance of his law enforcement duties. This Court employs a similar analysis in its discussion of the first Hudson factor. Plaintiff argues that the Texas Constitution and Texas statutes make it clear that Defendant is an agent of Tarrant County, and not an arm of the state. The Texas Constitution provides, in relevant part, that the "qualified voters of each county shall elect an assessor-collector of taxes for the county." TEX. CONST. ART. 8, SEC. 14. For purposes of financial disclosure, a county tax assessor-collector is a "county officer." TEX. LOC. GOV'T CODE § 159.032. Defendant collects taxes only in Tarrant County, for property in Tarrant County. State law also provides that Defendant's office be locally funded and operated, even when Defendant performs those tasks that Defendant claims place her in the role of an "arm of the state." Defendant argues that while she has a duty to collect local property taxes, she also has a duty to

---

[3]It is Plaintiff's position that a suit against Defendant in her official capacity is a suit against Tarrant County. Defendant says as much in her Answer. However, because Defendant *also* contends that she is an arm of the state, the Court engages in this analysis. The distinction between whether Defendant is sued in her individual or official capacity is not critical to the analysis or conclusion on sovereign immunity.

collect state sales taxes on motor vehicles. Defendant further argues that "major portions" of

fees associated with the registration and titling of automobiles go to the state, but Defendant

points to no statutes or cases that treat the county tax assessor-collector as an arm of the state,

rather than the county. The Court concludes that the first <u>Hudson</u> factor supports the conclusion

that Eleventh Amendment immunity is not available to Defendant in this case.

### Factor #2: The source of Defendant's funding

This factor is the most important of the six immunity factors identified as important by

the Fifth Circuit. <u>Hudson</u> at 682. Plaintiff argues that Defendant's entire funding is derived from

the taxes she collects in Tarrant County, pointing to one Texas statute providing that the salary of

a county officer may be paid from the general fund of the county in which the officer serves, and

another providing that the office of county tax assessor-collector is entitled to a fee for each

vehicle registration receipt it issues. TEX. LOC. GOV'T CODE § 152.001; TEX. TRANS. CODE §

502.109. Thus, Plaintiff argues, Defendant's funding is local, and not derived from the state

treasury. Defendant concedes that she is locally funded, but argues that "neither the regional

limitation alone nor the funding issue is determinative...notwithstanding the special weight given

to the funding factor." The second <u>Hudson</u> factor supports the conclusion that Eleventh

Amendment immunity is not available to Defendant in this case.

### Factor #3: Defendant's degree of local autonomy

Local autonomy "is not only a measure of the closeness of the connections" between an

entity and the state, "it is also the mechanism through which the Eleventh Amendment 'assures

that the federal courts do not interfere with a state's public policy and its administration of internal public affairs.'" Jacintoport Corp. v. Greater Baton Rouge Port Com., 762 F.2d 435, 442 (5th Cir. 1985)(citing Blake v. Kline, 612 F.2d 718, 725 (3rd Cir. 1979). Confusingly, Plaintiff argues that Defendant's local autonomy is limited, as the Texas Constitution provides that she is elected by the citizens of Tarrant County and can be replaced by them. TEX. CONST., ART. 8 § 14. Defendant argues that Plaintiff's "degree of autonomy in registering and titling vehicles is virtually nil; her duties are ministerial and set by the statutes in Chapters 501 and 502 of the [state] Transportation Code."

Based on the limited evidence submitted by the parties, the Court finds that factor #3 is neutral, or tending slightly in favor of the absence of local autonomy and the availability to the Defendant of Eleventh Amendment immunity.

Factor #4: Whether Defendant is concerned primarily with local, not statewide, problems

Plaintiff argues that Defendant's primary concern is with the collection of local taxes within the county, not with the collection of taxes across the state. Although a portion of the taxes she collects eventually go to the state, Defendant collects taxes only from the citizens of Tarrant County, and deposits monies she collects in the county treasury. Assuming, as Defendant maintains, that she uses forms provided by the Texas Department of Transportation ("TDOT") and that she operates under rules prescribed by TDOT, the fact remains that her primary duty is to collect taxes within Tarrant County. Regardless of the source of the forms and paperwork she uses in the performance of her duties, the *objective* of Defendant's job is to see that taxes are properly paid on property located within the county, and her primary concern is not the collection

of taxes across Texas.  Accordingly, factor #4 supports the conclusion that Defendant may not

assert Eleventh Amendment immunity.


### Factor #5: Whether Defendant has the authority to sue and be sued in her own name

Plaintiff argues that there is no statute that gives Defendant the power to sue and be sued

in her own name (i.e., "separate and apart from the liabilities she incurs as a county officer or an

individual").  Pl. Brief at 9.  Defendant agrees.  Def. Brief at 5.  Hudson explains that the power

to sue and be sued militates against Eleventh Amendment immunity.  Hudson at 691.  That

Defendant can be sued in her individual capacity (e.g., for a tort entirely unrelated to her job as

county tax assessor-collector) and that she can be sued in her official capacity as a county official

supports the conclusion that Defendant may not assert Eleventh Amendment immunity.


### Factor #6: Whether Defendant has the right to hold and use property

Plaintiff argues that "county tax assessor-collectors are given the responsibility to collect

taxes and fees, establish offices, deputize individuals to collect the fees on their behalf, request

bonds from deputies and manage their offices," and that these rights to hold and use property

weigh against the availability of Eleventh Amendment immunity to the Defendant.  Defendant

argues that although she holds property in the form of money, "she does not 'use it' in connection

with motor vehicle registration, taxation, and sales tax collection, but merely passes it on to the

State or county."  Def. Brief at 5.  The Court concludes that this factor supports the conclusion

that Defendant may not assert Eleventh Amendment immunity.

Five of the six Hudson factors, including the second, which is the most important factor,

8

lead to the conclusion that Eleventh Amendment immunity is not available to Defendant.

## Conclusion

The Fifth Circuit has held that the general rule that Eleventh Amendment immunity does not extend to counties applies unless there is "convincing evidence distinguishing the county in question from counties generally." Crane v. County of Dallas, 759 F.2d 412 (5th Cir. 1985). Defendant has not distinguished Tarrant County from counties generally, nor has she otherwise demonstrated that, under Hudson, she should be considered an arm of the state. For these reasons, with respect to the Eleventh Amendment issue, Plaintiff's Motion for Partial Summary Judgment is **GRANTED**, and Defendant's Cross-Motion for Partial Summary Judgment is **DENIED**. Defendant is not entitled to Eleventh Amendment immunity.

## STATE SOVEREIGN IMMUNITY

In Texas, there are two types of state sovereign immunity – immunity from suit and immunity from liability. Defendant no longer maintains any claim of sovereign immunity from liability. Thus, the Court need only decide whether Defendant may properly assert state immunity from suit.

A county is a governmental unit protected by the state doctrine of sovereign immunity. Travis County v. Pelzel & Assocs., 77 S.W.3d 246, 248 (Tex. 2002). Even if liability is clear, immunity from suit deprives a trial court of subject matter jurisdiction. Texas Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). A county does not waive immunity from suit simply by contracting with a private party. Id. Express legislative consent to sue a county is required to

demonstrate that immunity from suit has been waived. <u>Pelzel</u> at 248.

Plaintiff argues that the legislature has given its express consent to Defendant's being sued. Plaintiff points to a recently enacted statute in which the Texas legislature waived sovereign immunity for "local governmental entities" in the adjudication of claims arising under certain written contracts. TEX. LOC. GOV'T CODE §§ 271.151-.152 (2005). Section 271.151(3) defines a "local governmental entity" as "a political subdivision of this state, other than a county or a unit of state government, as that term is defined by Section 2260.001, Government Code," and includes municipalities, public school districts, junior college districts, and special-purpose districts or authorities. <u>Id</u>. Plaintiff argues that, while counties are specifically excluded from the definition of "local governmental entity," *representatives* of counties are not so excluded. Plaintiff argues this means that Defendant is a local government entity who can be sued under § 271.151 on the insurance contracts at issue in this case. The Court finds unpersuasive the contention that the county can be sued, but its representatives cannot. Texas law requires not only that the legislature consent to suit, but that it do so in clear and unambiguous language. <u>Federal Sign v. Tex. Southern Univ.</u>, 951 S.W.2d 401, 405 (Tex. 1997). In the Court's view, the suit against Defendant is a suit against Tarrant County. Counties are excluded from the waiver of sovereign immunity given by the legislature in § 271.151, and logically, so are the county's agents. Plaintiff points to no other statute that purportedly waives Defendant's immunity. Plaintiff's argument that the legislature has expressly waived Defendant's sovereign immunity thus fails.

However, in <u>Federal Sign</u>, while the Texas Supreme Court held that the simple execution of a contract by the state does not have the effect of waiving its immunity to suit, the court also

noted:

> We hasten to observe that neither this case nor the ones on which it relies should be read too broadly. We do not attempt to decide this issue in any other circumstances other than the one before us today. There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts. Id. at 408, fn 1.

The Texas Supreme Court held that "we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission." Id. at 404, citing Cobb v. Harrington, 190 S.W.2d 709, 712 (Tex. 1945). In this case, Plaintiff seeks a declaratory judgment, not money damages. Defendant argues that "a litigant's request for declaratory relief cannot...change the basic character of a suit" and that Plaintiff "has failed to name one statute that clearly and unambiguously waives immunity from suit for a Declaratory Judgment based on a contractual cause of action against a county."

In Cobb, the taxpayer brought an action against the Texas Comptroller and his deputy, seeking a declaration that the taxpayer was not liable to pay an occupation tax for "motor carriers." The trial court found that the taxpayer was not a motor carrier under the applicable statute. The Texas Supreme Court upheld the trial court's ruling that the action was not one against the state because the Comptroller's action in treating the taxpayer as a motor carrier was unauthorized. The Texas Supreme Court stated:

> This is not a suit to impose liability upon the State or to compel the performance of its contract, as was Herring v. Houston National Exchange Bank [citation omitted]. It is not an action that is in essence one for the recovery of money from the State or in which a judgment obtained would be satisfied by the payment out of funds in the State treasury, as was true of Ford Motor Company v. Department

of Treasury, 323 U.S. 459.  It is not a suit like Short v. W.T. Carter & Bro., 133
Texas 202, 126 S.W.2d 953, the purpose of which was to control the Land
Commissioner when acting within the scope of authority lawfully conferred upon
him.  This action is for the purpose of obtaining a judgment declaring that
respondents are not motor carriers as defined by the tax statute, and that
petitioners, in endeavoring to compel respondents to pay the tax are acting
wrongfully and without legal authority.

Cobb at 365-66.  The Texas Supreme Court went on to hold that acts of officials which are not

authorized by law are not acts of the State, and an action against an official to declare that lack of

authority is not a suit against the State for purposes of state sovereign immunity.

The Texas Supreme Court held in IT-Davy that " private parties cannot circumvent the

State's sovereign immunity from suit by characterizing a suit for money damages, such as a

contract dispute, as a declaratory-judgment claim." Texas Natural Res. Conservation Comm'n v.

IT-Davy, 74 S.W.3d 849, 856 (Tex. 2002).  However, this is not a suit to impose liability on

Defendant.  Plaintiff does not seek the recovery of money, nor would a judgment favorable to

Plaintiff be satisfied by the payment of funds out of the State treasury.  Plaintiff seeks only to

establish its lack of responsibility to Defendant.  Accordingly, the Court concludes that Plaintiff

may maintain this suit without express legislative permission.

Even if this Court were to find that Plaintiff's suit is in effect a suit for the recovery of

state monies, the Court notes Federal Sign's admonition that there "may be other circumstances

where the State may waive its immunity by conduct other than simply executing a contract so

that it is not always immune from suit when it contracts."  Plaintiff argues that Defendant waived

immunity when she made payments under the Crime Shield Policy, asserted a claim under the

Crime Shield Policy, and asserted a claim under the Surety Bond, because these actions are

inconsistent with the assertion of sovereign immunity.  Plaintiff also argues that Defendant's

institution of a suit against Plaintiff in state court (to address the same underlying substantive

issue as the one presented in this case), where she seeks to recover on the policies, amounts to a

waiver of immunity by conduct.  Because the Court has already concluded that Plaintiff may

maintain its suit without express consent by the state legislature, it does not further analyze these

arguments.

Plaintiff's Motion for Partial Summary Judgment on Defendant's claim of state common

law sovereign immunity is hereby **GRANTED**.  Defendant's Cross-Motion for Partial Summary

Judgment on grounds of state sovereign immunity is **DENIED**.


### *BRILLHART* ABSTENTION

Defendant argues that even if the Court finds it has subject matter jurisdiction, it should

abstain from the exercise of that jurisdiction, under the principles set forth in Brillhart v. Excess

Ins. Co. of America, 316 U.S. 491 (1942).  The Court must determine whether the declaratory

judgment action is justiciable and whether the Court has authority to grant declaratory relief and,

if so, whether to exercise its discretion to decide the action.  Sherwin-Williams Co. v. Holmes

County, et al., 343 F.3d 383, 387 (5th Cir. 2003).  Neither Plaintiff nor Defendant dispute that this

action is justiciable nor that the Court has authority to grant declaratory relief.  The issue is

whether the Court will exercise its discretion to handle the case.

Brillhart governs this Court's decision on whether to stay a declaratory judgment action

during the pendency of parallel state court proceedings.  The Court need not employ the

Colorado River test, applicable to abstention by a federal court from proceeding with parallel

litigation, under which the Court must point to "exceptional circumstances" to justify abstaining from the exercise of its jurisdiction. *See* Colorado River Water Conservation Dist., et al. v. United States, 424 U.S. 800 (1976). In Brillhart, the Supreme Court held that district courts have discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, notwithstanding the existence of subject matter jurisdiction. In deciding whether it should abstain, the Court decides "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." Answering this fundamental question "may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding..." Brillhart at 495.

In Rowan Companies, Inc. v. Griffin, 876 F.2d 26 (5th Cir. 1989), the Fifth Circuit outlined several factors relevant to a district court's determination of whether to decide a declaratory judgment suit:

> Declaratory judgment relief may be denied because of a pending state court proceeding in which the matters in controversy between the parties may be litigated, because the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping, because of possible inequities in permitting the plaintiff to gain precedence in time and forum, or because of inconvenience to the parties or the witnesses." Granite State Ins. Co. v. Tandy Corp., et al., 986 F.2d 94, 96 (5th Cir. 1992), quoting Rowan at 28.

Issues of judicial economy are also to be considered. Travelers Insurance Co. v. Louisiana Farm Bureau Federation, Inc., et al., 996 F.2d 774, 778 (5th Cir. 1993). Combined with

the factors mentioned above, consideration of "whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending" comprises what are referred to as the Trejo factors.[4]

### Is there a pending state action in which all the matters in the controversy may be litigated?

The key question is whether the controversy is better decided in state court or in federal court. Trejo at 392.  Though Plaintiff urges vigorously that the Court should not abstain from exercising its jurisdiction over this case, it does not dispute many similarities between this case and the state court lawsuit.  Rather, Plaintiff's opposition centers around the general notion of "fairness."

### Did Plaintiff file suit in anticipation of a lawsuit to be filed by Defendant?

Even when, as here, a declaratory plaintiff is first to file a lawsuit, it may be appropriate for a court to abstain from exercising jurisdiction over it.  The facts before the Court support the conclusion that Plaintiff filed this action in anticipation of suit by Defendant.  On August 29, 2005, Defendant sent Plaintiff correspondence complaining of Plaintiff's denial of Defendant's claim for $767,089.26 under the Surety Bond and Crime Shield Policy.  As Plaintiff admits, "[t]his letter disputing the denial caused Hartford to file this suit for declaratory relief." Pl. Brief

---

[4]In St. Paul Ins. Co. v. Trejo, the Fifth Circuit culled from previous Supreme Court and Fifth Circuit cases seven nonexclusive factors for a district court to consider in deciding whether to decide a declaratory judgment action, each of which is mentioned above.  39 F.3d 585 (5th Cir. 1994).

at 10. However, the "mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." Sherwin-Williams at 397. This factor, which favors Defendant, is appropriately considered in light of all other factors.

### Did Plaintiff engage in forum shopping in bringing this declaratory judgment action?

The Court finds that Plaintiff did engage in forum shopping – seeking a forum other than one in Tarrant County. In fact, the crux of Plaintiff's argument against abstention by this Court is that it would be unfair to subject it to litigation in state court in Tarrant County when its opponent is, in effect, Tarrant County. Plaintiff argues that a suit in Tarrant County places the "fox in the hen house." Pl. Resp. at 5. Plaintiff's argument stresses the notion of local bias in Tarrant County, but such bias, if proven, can support a motion to transfer venue filed with the state court. This factor favors dismissal.

### Do possible inequities exist in allowing Plaintiff to gain precedence in time or to change forums?

This factor looks to whether Plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds. Sherwin-Williams at 391. Defendant does not specifically argue this and the Court does not find such inequities to be present here.

### Is the federal court a convenient forum for the parties and witnesses?

The state court in Tarrant County is a more convenient forum for Defendant than is this Court, because her office and records are located in Tarrant County. However, as Defendant

16

concedes in her Brief, this Court and the state court are in very close proximity to one another, and this factor deserves very little weight in this instance.

### Will retaining the lawsuit in federal court serve the purposes of judicial economy?

The Fifth Circuit has held that a "federal district court should avoid duplicative or piecemeal litigation where possible. A federal court should be less inclined to hear a case if necessary parties are missing from the federal forum..." Sherwin-Williams at 391. The Court is of the view that proceeding with this lawsuit in this forum sacrifices judicial economy.

The state court lawsuit includes the Bond's principal, and the Court is unaware of any argument that the Bond's principal has been improperly joined in the case. Given that federal law is not at issue in this dispute and that duplicative or overlapping litigation will result if this Court proceeds, and that the state court lawsuit involves an additional party whose rights and obligations may be central to the claims but whose rights and obligations cannot be determined here, the Court does not believe judicial economy is served by this Court proceeding.

### Is the federal court being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending?

This factor is inapplicable here.

### Conclusion

The Court notes Plaintiff's argument as it relates to notions of federalism, fairness, and efficiency, and believes it has incorporated analysis of such an argument into its discussion of the

Trejo factors.  In light of the foregoing discussion, showing that, as applied to this case, the Trejo factors weigh strongly in favor of this Court's refraining from exercising jurisdiction over the matter, the Court finds that Defendant's Motion for Brillhart Abstention should be **GRANTED**. Accordingly, this case is hereby **DISMISSED** in favor of the state court suit.

     **SO ORDERED.**

     **DATED:** June 19, 2006.


BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE